IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| A. B., | CASE NO. 8:08CV426 |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| MILLARD PUBLIC SCHOOL DISTRICT, A Nebraska Political Subdivision, | |
| Defendant. | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 104). For the reasons discussed below, the Motion will be granted.

### FACTUAL AND PROCEDURAL HISTORY

The parties' briefs (Filing Nos. 106, 112 and 117) and indexes of evidence (Filing Nos. 105 and 113) reveal that the following facts are not in dispute between the parties,[1] and the Court has construed all facts in a light most favorable to the Plaintiff, A.B.

In 2002, A.B. was a student in the Millard Public School District ("MPSD") and Stephanie Hall-Draper ("Hall-Draper") was a teacher employed by MPSD, a Nebraska Political Subdivision. Relevant events concerning contact between A.B. and Hall-Draper all occurred in 2002.

After A.B. enrolled at Millard North Middle School for his eighth grade year, he met Hall-Draper. A.B. and Hall-Draper became friends, and they engaged in small talk in the school hallway. A.B. and other students occasionally went to Hall-Draper's classroom

---

[1] A.B.'s allegations regarding sexual contact with Hall-Draper are not disputed by MPSD, and are presumed to be true for purposes of the pending motion. The Court recognizes that Hall-Draper is not a party to this case, and has not had an opportunity to dispute allegations in the context of this litigation.

after school.  A.B.'s mother was also a teacher at Millard North Middle School, and she was aware that A.B. and other students went to Hall-Draper's classroom after school.

Hall-Draper was never A.B.'s teacher, home room instructor, study hall supervisor, or the coordinator of any of his school-related extracurricular activities, and he never had a "formal professional relationship" with her "teacher-wise."  (Deposition of A.B., Filing No. 105-1, 139:11 to 140:1.)

One day, A.B. told his mother that Hall-Draper had invited him to dinner, and A.B. went with Hall-Draper to a local restaurant for dinner, during which there was no inappropriate discussion.  After dinner, Hall-Draper drove A.B. home and asked for his telephone number.  She then contacted A.B. a few times by telephone and made "small talk."  A.B. did not tell anyone that Hall-Draper had contacted him by telephone.

One evening, Hall-Draper telephoned A.B. and they made plans to meet at her home the following afternoon.  The meeting took place; A.B. and Hall-Draper engaged in sexual intercourse; and Hall-Draper drove A.B. home.  When his mother asked where he had been, A.B. told her that he had been at Hall-Draper's house hanging out and playing a video game.

During a later telephone conversation, Hall-Draper and A.B. again arranged to meet at Hall-Draper's home; during that meeting, they engaged in sexual intercourse; and Hall-Draper drove A.B. home.  When his mother asked where he had been, A.B. told her that he and a friend had been hanging out at Hall-Draper's house.

Later, Hall-Draper and A.B. visited her farmland in Washington County, Nebraska, and kissed.  A final encounter occurred at Hall-Draper's home, again coordinated by private telephone communication.

None of the sexual encounters between Hall-Draper and A.B. occurred on school grounds, and A.B. did not report any of the encounters until approximately six years after they occurred. He commenced this civil action on September 22, 2008.

Before the date of Hall-Draper's first sexual misconduct with A.B., MPSD investigated and acted upon one complaint lodged against her. The complaint involved another Millard North Middle School student. Hall-Draper asked this student to dinner; drove him home from school; called him to her classroom; and told him that she could not stop thinking about him. Hall-Draper also appeared at his home to ask his parents if she could speak to him.

At all relevant times, complaints against MPSD staff were reported to the MPSD superintendent or designee. A complaint about Hall-Draper's conduct vis-a-vis the non-party student was received by the Superintendent's designee, Principal Gary Barta, who investigated the matter with the help of Assistant Principal Bryan Lubbers, school social worker and community counselor Kelly Latimer, and Dr. Kirby Eltiste, MPSD's Assistant Superintendent for Human Resources. In the course of the investigation, Barta, Lubbers, and Latimer met with the boy individually, and spoke with his parents. Lubbers and Eltiste met with and interviewed Hall-Draper. Latimer also interviewed two students with whom the boy had spoken about the incident. Hall-Draper did not disagree with the information that the boy and his parents reported, and the MPSD administration issued her a formal written reprimand, and referred her to the Methodist Employee Assistance Program, but concluded that she did not pose a threat to students.[2]

---

[2] The evidentiary record indicates that this conclusion was reached, and the remedial action taken, by Eltiste. "At the conclusion of the investigation, I determined

A.B. brought this action on September 22, 2008. His first two causes of action are brought under 42 U.S.C. § 1983. First, he alleges that Hall-Draper acted under color of law and with deliberate indifference to his "rights, privileges and immunities secured by the United States Constitution." Second, he alleges that MPSD had a custom or practice of ignoring misconduct by its professional staff and failed to train its employees to be observant of warning signs of grooming and sexual abuse of students, resulting in an infringement of his liberty interest in his bodily integrity. In his Third Cause of Action, A.B. alleges that MSPD was negligent in supervising and retaining Hall-Draper, and failing to warn A.B.'s parents of her inappropriate behavior, proximately causing A.B.'s injuries. Although A.B.'s Complaint makes no mention of the Nebraska Political Subdivisions Tort Claims Act ("NPSTCA"), the Court has construed the Complaint liberally as stating a cause of action under the NPSTCA. (Memorandum and Order, Filing No. 42, at 4-5.)

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving

---

that Stephanie Hall-Draper was not a threat to students, and concluded that a formal written reprimand and appointment with the Methodist Employee Assistance Program were appropriate repercussions." Affidavit of Kirby Eltiste ("Eltiste Aff."), Filing No. 105, Exhibit 12, ¶ 13. The "Supervisory Referral to EAP" was issued by Eltiste as "Supervisor or Company Representative" and indicated the "Critical Incident" to be "8th GRADE STUDENT CONTENDED STEPHANIE MADE UNWELCOME 'ADVANCES' INCLUDING DINNER, RIDES HOME, WORRYING ABOUT STUDENT. STEPHANIE STRUGGLES WITH WHAT IS RIGHT/WRONG IN TERMS OF HUGGING, SUPPORTING, CARING ABOUT KIDS." (Exhibit B to Eltiste Aff.) The referral also noted that a discussion about Hall-Draper's performance problem occurred on 2-22-02; that she received a verbal and written warning; and that she occasionally had wide swings in morale/mood, difficulty in recognizing own mistakes, and "Complaints from customers. (Student)."

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortgage & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005))*.*  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id*. at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id*. at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, citing Fed. R. Civ. P. 1.

## DISCUSSION

### I.  CIVIL RIGHTS CLAIMS UNDER 42 U.S.C. § 1983

#### A.  Did Hall-Draper Act Under Color of State Law?

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liberally construing his Complaint, A.B. alleges that Hall-Draper acted under color of state law when depriving him of a liberty interest in his bodily integrity in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. A.B. refers the Court to *Doe v. Taylor Independent School Dist.*, 15 F.3d 443 (5th Cir. 1994), for the proposition that "physical sexual abuse by a school employee violates that right." *Id.* at 450.  A.B. also relies on the decision in *Hackett v. Fulton County School Dist.*, 238 F.Supp.2d 1330 (N.D. Ga. 2002), to demonstrate that the sexual abuse need not occur on school property or during school hours to give rise to a cause of action under § 1983.

In *Hackett,* the district court noted that the Eleventh Circuit had "cited with approval a decision of the Fifth Circuit that a public school teacher acts under color of state law when there is a 'sufficient nexus' between the teacher's duties and his sexual misconduct toward a student." 238 F.Supp.2d at 1356 (citing *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1305 (11th Cir. 2001)(citing *Taylor Ind. Sch. Dist.*, 15 F.3d at 452 n. 4)).  The *Hackett*

court also said: "When a public employee's performance of his duties merely facilitates the development of a relationship between the employee and another person, and the employee later, on his own time and independent of his official duties, commits an assault or other constitutional tort against the person, the employee is not acting under color of state law." 238 F.Supp.2d at 1356, citing *Griffin,* 261 F.3d at 1306.

In *Taylor Ind. Sch. Dist.*, the Fifth Circuit held that a teacher acted under color of state law when he engaged in an ongoing sexual relationship with his student, even though a significant amount of the sexual contact between them occurred after hours and off school grounds. *Id.,* 15 F.3d at 452 n. 4.  In *Hackett*, the court recognized that "[o]ther courts using a similar 'nexus' test have concluded, however, that a teacher who meets a student at school, but who does not commit the acts of sexual abuse or misconduct during a period when the teacher is actively engaged in teaching that student, does not act under color of state law." *Hackett*, 238 F.Supp.2d at 1357 (citing *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir.1997) (although the teacher had "first befriended and shown a special interest in" the victim at school, there was no nexus between the teacher's official duties and the assault when the student was molested in the teacher's home five months after the student withdrew from school); and *D.T. v. Indep. Sch. Dist.*, 894 F.2d 1176, 1186-88 (10th Cir.1990)  (teacher did not act under color of law when he molested students during summer vacation and the molestation took place at his home following an activity not affiliated with the school)).

In *Hackett*, the teacher was at all relevant times the plaintiff's science teacher and lured the plaintiff to his home under the pretense that a science scholarship program was

available to the plaintiff if he would participate in certain science projects with the teacher. The court observed that "[t]hese circumstances present a closer call than do some of the cited cases as to whether [the teacher] was acting under color of state law when he committed the acts against the plaintiff that allegedly violated the plaintiff's constitutional rights." *Hackett*, 238 F.Supp.2d at 1357. However, the court concluded that the nexus was sufficient to demonstrate that the teacher's action was under color of state law, and allowed the plaintiff's § 1983 claim against the teacher to survive summary judgment, although actions against the school district and supervisory personnel were dismissed. *Id.*

In the case at hand, the nexus between Hall-Draper's role as a teacher and her sexual assaults of A.B. is not sufficient to demonstrate action under color of state law. Hall-Draper was never A.B.'s teacher, nor did she play any official role as his supervisor, advisor, counselor or coach. The objectionable conduct all took place off school grounds, after school hours, and unrelated to any school function. Hall-Draper's role as a teacher may have facilitated the development of her relationship with A.B., but her alleged misconduct occurred on her own time and independent of her official duties.

In *S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025, 1027 (8th Cir. 2002), the Court determined that a school volunteer, whose status at the school influenced the plaintiff's mother to allow the plaintiff to visit his home, was not acting under color of state law when he assaulted the plaintiff. In *Roe v. Humke*, 128 F.3d 1213, 1217-18 (8th Cir. 1997), the Court similarly found that a police officer who worked at the plaintiff's school was not acting under color of law when he sexually abused her while off duty and away from

8

school property.  As in *S.J.* and *Roe*, Hall-Draper's alleged misconduct "was a private tort committed by a person acting in a purely private capacity."  *Roe*, 128 F.3d 1218.

### B. Did MPSD Have Policies of Ignoring Teacher Misconduct or Failing to Train Employees to Observe Signs of Grooming and Sexual Abuse?

Even if A.B. had demonstrated that Hall-Draper acted under color of state law, he has not presented any genuine issue of material fact as to MPSD's alleged policy or custom of ignoring teacher misconduct or its alleged failure to train employees to observe signs of grooming and sexual abuse.

The facts, viewed in a light most favorable to A.B., could not lead a reasonable finder of fact to conclude that (1) there was a continuing, widespread, persistent pattern of unconstitutional misconduct by Hall-Draper or MPSD employees in general, (2) MPSD administrators were deliberately indifferent to or tacitly authorized such misconduct after receiving notice of it, and (3) MPSD's indifference or tacit authorization of the misconduct was the moving force behind the constitutional violation that caused A.B.'s injury.  *See Thelma D. v. Board of Ed. of the City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991) (citing *Jane Doe "A" v. Special Sch. Dist. Of St. Louis,* 901 F.2d 642, 646 (8th Cir. 1990)).

Neither could the facts, viewed in a light most favorable to A.B., lead a reasonable finder of fact to conclude that MPSD's training of its employees was so inadequate as to give rise to liability under § 1983.  To succeed on such a claim, A.B. must show that MPSD's failure to train its employees "'in a relevant respect evidences a deliberate indifference' to the rights of the students." *Thelma D*., 934 F.2d at 934 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, (1989)).  To establish "deliberate indifference," A.B. must offer evidence that the school district "had notice that [their] procedures were

9

inadequate and likely to result in a violation of constitutional rights." *Thelma D.*, 934 F.2d at 934. A.B. may show that MPSD had notice of the inadequacy of their procedures in two different ways: He may show that the failure to train employees "is so likely to result in a violation of constitutional rights that the need for training is patently obvious," *id.*, or that "a pattern of misconduct indicates that MPSD's responses to a regularly recurring situation are insufficient to protect the students' constitutional rights." *Id.* (quoting *P.H. v. School Dist. of Kansas City*, 265 F.3d 653, 660 (8th Cir.2001)). There was no "pattern of misconduct," by Hall-Draper or other MPSD employees indicating that MPSD's response to a regularly recurring situation was insufficient to protect students' constitutional rights. Even if the Court were to assume that there was a "patently obvious" need for MPSD to train its employees to recognize and act upon signs of sexual predation by school personnel, and even if factual issues remained concerning whether MPSD's training efforts in that area were deficient,[3] the facts, viewed in a light most favorable to A.B., demonstrate that any deficiency in training was not the cause of A.B.'s injuries.

## II. TORT CLAIMS under NPSTCA

"A negligence action brought under the PSTCA has the same elements as a negligence action against a private individual., *i.e.*, duty, breach of duty, causation, and damages." *Doe v. Omaha Public School Dist.*, 727 N.W.2d 447, 454 (Neb. 2007). A.B. has demonstrated that MPSD had a duty to protect him from foreseeable assaults by others, including teachers, but has not demonstrated any genuine issue of material fact as

---

[3] MPSD has presented evidence of its written policies and employee training on issues of sexual harassment and the reporting of suspected child abuse. Eltiste Aff. ¶¶ 14-16, and Exhibits A, C, and D to Affidavit. The Court has given no weight to such evidence, because little foundation has been laid regarding how such policies and programs were implemented.

to whether MPSD breached that duty or as to whether any breach was the cause of his injuries. For that reason, and the reasons discussed below, the Court concludes that A.B.'s action against MPSD under the NPSTCA should be dismissed.

### A.  Application of Intentional Tort Exception

The parties acknowledge and agree that sovereign immunity of Nebraska's political subdivisions has not been waived with respect to claims arising out of assault or battery. (Neb. Rev. Stat. § 13-910(7).) A.B. contends, however, that the intentional-tort exception is inapplicable here, because his claim is not based on a theory of respondeat superior for Hall-Draper's alleged assaults, but on MPSD's breach of an independent legal duty to take reasonable steps to prevent her tortious conduct.

A.B. asserts that MPSD was negligent in its failure to protect him from foreseeable harm, and relies on a number of cases in support of this theory. In *Sheridan v. United States*, 487 U.S. 392 (1988), the Supreme Court held that the intentional tort exception in the Federal Tort Claims Act ("FTCA") did not preclude a claim based on the negligence of government employees who permitted an intoxicated off-duty serviceman to leave a hospital with a loaded rifle, contrary to regulations. *Id.* at 401. In *Doe v. Omaha Pub. Sch. Dist.,* the Nebraska Supreme Court, relying in part on *Sheridan*, held that a complaint should not be dismissed based on the intentional tort exception in the NPSTCA if the complaint alleged that government actors had "prior knowledge of specific behaviors on the part of [an assailant] which made his alleged subsequent violent conduct reasonably foreseeable." 727 N.W.2d at 454. "Whether the alleged assault . . . was foreseeable is a matter of proof." *Id*. In *Doe*, the plaintiff alleged that the school district had actual

11

knowledge that the perpetrator had a history of physical and/or sexual misconduct toward other students prior to the date of the alleged assault and took no steps to restrict or restrain him. *Id*. The Nebraska Supreme Court concluded that the allegations stated a claim for relief under the NPSTCA. *Id.*

The NPSTCA's intentional-tort exception did not prevent A.B. from bringing his claim against MPSD, but now he must demonstrate that there is some genuine issue of material fact remaining for trial, or that the facts, construed in a light most favorable to him, could lead a reasonable finder of fact to conclude that MPSD employees had prior knowledge of specific behaviors on the part of Hall-Draper that made her assaultive conduct reasonably foreseeable. A.B. has not demonstrated the existence of any genuine issue of material fact remaining for trial, nor has he presented evidence from which a reasonable finder of fact could conclude that Hall-Draper's prior conduct, known to MPSD, made her assaultive behavior toward A.B. reasonably foreseeable.

### B.  Application of Discretionary Function Exception

In *Doe v. Omaha Pub. Sch. Dist.*, the Nebraska Supreme Court also addressed Omaha Public School's discretionary function defense. The Court began by describing the purpose of discretionary function immunity:

> The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. The discretionary function exception extends only to basic policy decisions. The exception does not extend to the exercise of discretionary acts at an operational level. . . . Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards. The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. The political subdivision remains liable for negligence of its

> employees at the operational level, where there is no room for policy judgment.

727 N.W.2d at 456-57 (internal citations omitted).  Next, the Court explained the two-step analysis in which a court must engage to determine if the discretionary function exception applies:

> First, the court must consider whether the action is a matter of choice for the acting employee.  If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

*Id*. at 457.

> Finally, the Court recognized that it may be impossible to perform this analysis without a factual record:

> When the facts are undisputed, the determination of whether the discretionary function exception applies is a question of law.  By the same token, however, it is often difficult to undertake such an analysis without a complete factual record.

*Id*. at 457 (internal citations omitted).

The Nebraska Supreme Court remanded the case to the district court for development of the necessary factual record.  *Id.* at 458.

Here, the factual record has been developed, and the material facts are undisputed. The application of the discretionary function exception is now a question of law before this Court.  The Court concludes that Eltiste, in his capacity as MPSD's Assistant Superintendent for Human Resources, acted on a matter of choice when he determined that Hall-Draper should receive a verbal and written reprimand and be referred to an Employee Assistance Program, and not be terminated or otherwise disciplined, following the investigation of the non-party student's complaint.  Eltiste's conduct, in acting on that

13

matter of choice, involved an element of judgment. That judgment, *i.e.*, a decision as to what level of discipline and corrective action to impose upon Hall-Draper in response to the non-party student's complaint, was the kind of judgment that the discretionary function exception was designed to shield. Specifically, his was a decision exercised in a broad regulatory framework necessarily lacking in specific standards, and it was an administrative decision grounded in policy that should not be susceptible to judicial second-guessing through the medium of tort.

## CONCLUSION

Because Hall-Draper's misconduct was not committed under color of state law, A.B.'s action under 42 U.S.C. § 1983 will be dismissed. Because MPSD did not have knowledge of specific behaviors on the part of Hall-Draper that made her assaultive conduct toward A.B. reasonably foreseeable, and because MPSD's decision to impose certain limited discipline against Hall-Draper for prior misconduct was a discretionary function, A.B.'s state-law tort claim also will be dismissed.

IT IS ORDERED:

1. Defendant Millard Public School District's Motion for Summary Judgment (Filing No. 104) is granted;

2. Plaintiff A.B.'s Complaint is dismissed, with prejudice; and

3. A separate Judgment will be entered.

DATED this 20th day of October, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge